**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**


**ASSOCIATION CASUALTY INSURANCE**
**COMPANY; BENCHMARK INSURANCE**
**COMPANY; GEORGIA CASUALTY & SURETY**
**COMPANY; and NATIONAL SECURITY**
**FIRE and CASUALTY COMPANY**                                              **PLAINTIFFS**


**VERSUS**                                    **CIVIL ACTION NO. 1:06cv954KS-RHW**


**ALLSTATE INSURANCE COMPANY;**
**FARM BUREAU MUTUAL INSURANCE**
**COMPANY; NATIONWIDE MUTUAL FIRE**
**INSURANCE COMPANY d/b/a NATIONWIDE**
**INSURANCE COMPANIES; STATE FARM**
**FIRE AND CASUALTY COMPANY; ST. PAUL**
**TRAVELERS COMPANIES; LORRIE K. BROUSE;**
**ROBERT P. ARNOLD; DELMA P. LOCKE, JR.;**
**TERRY BLALOCK; CHARLES RICE; and**
**BRAD LITTLE**                                                                  **DEFENDANTS**




<u>**MEMORANDUM OPINION AND ORDER**</u>

        This matter is before the court on Joint Motion to Dismiss **[#33]** filed on behalf of

the defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The

court, having reviewed the motion, the response, the briefs of counsel, the pleadings

and exhibits on file and being otherwise fully advised in the premises finds that the

motion is not well taken and should be denied.  The court specifically finds as follows:

## FACTUAL BACKGROUND

This case involves allegations by four insurer members[1] ("the plaintiffs") of the Mississippi Windstorm Underwriter's Association ("the Association" or "the MWUA") that five large private insurance companies ("insurer defendants") and certain named representatives ("individual defendants"), operating as the Board of Directors of the MWUA intentionally or negligently failed to procure reasonable and appropriate reinsurance for the Association because of a conflict of interest. The plaintiffs are ultimately seeking certification as class representatives on behalf of a class alleged to be more than one hundred non-defendant insurer members of the Association.

The Complaint alleges that the defendants' actions constituted negligence and breach of their fiduciary duty towards all members of the proposed Class, which caused the proposed Class unreinsured losses up to approximately $525 million. The overarching loss allegation is calculated by the plaintiffs as the difference between (1) the approximately $700 million in claims that the Association is estimated to pay to its insureds as a result of property damage claims arising out of Hurricane Katrina, and (2) the $175 million in reinsurance actually procured by the MWUA Board on behalf of the Association for the 2004 and 2005 hurricane seasons.


## THE MISSISSIPPI WINDSTORM UNDERWRITING ASSOCIATION

The Mississippi Windstorm Underwriting Association is a creature of the Mississippi Legislature, which acted "to provide a mandatory program to assure an

---

[1]  There were originally five plaintiffs. Aegis Security Insurance Company filed a Rule 41 voluntary dismissal on April 20, 2007.

adequate market for windstorm and hail insurance in the coast area of Mississippi."

1987 Miss. Laws, ch. 459, § 1. The MWUA is euphemistically referred to as the

"windpool." In creating the MWUA, the Legislature made the following finding of public

necessity:

> The Legislature of the State of Mississippi hereby declares that an
> adequate market for windstorm and hail insurance is necessary to the
> economic welfare of the State of Mississippi and that without such
> insurance the orderly growth and development of the State of Mississippi
> will be severely impeded; that furthermore, adequate insurance upon
> property in the coast area is necessary; and that while the need for such
> insurance is increasing, the market for such insurance is not adequate
> and is likely to become less adequate in the future.

*Id.* As the defendants point out, for almost two decades, in accordance with its

legislative purpose, the Association has made windstorm and hail insurance available to

residents of the coastal counties of Mississippi who otherwise would not have been able

to get such insurance in the normal insurance market.

The MWUA is composed of all insurers who write property insurance on a direct

basis anywhere in Mississippi. Miss. Code Ann. § 83-34-3 (2006). Insurers are

required by statute to participate in the MWUA as a condition of transacting insurance

anywhere in the state. *Id.* All members of the Association participate in the MWUA's

writings, expenses, profits, and losses in the proportion that the net direct premiums

written by each such member bears to the aggregate net premiums written in the state

by all members of the Association. *Id.*, § 83-34-9. Each member, however, receives a

credit for windstorm and hail insurance it voluntarily writes in the coast area which

results in a reduction of the writing member's total responsibility for general windpool

losses. This is to encourage insurers to write such insurance. *Id.*

The statute required the Association, within forty-five days after the date of passage, to submit a proposed plan of operation for review and approval by the Commissioner. Miss. Code Ann. § 83-34-13 (2006). With the Commissioner's approval, the Association adopted a Plan of Operation ("Plan") and Articles of Agreement, effective October 1, 1987. By statute, the power to amend or modify the Plan remains solely in the discretion of the Commissioner. Miss. Code Ann. § 83-34-13 (2006).

The Mississippi State Rating Bureau manages the day-to-day operations of the Association. The Plan, however, vests the administration of the business affairs and activities of the Association with its Board of Directors, subject to review by the Commissioner. Plan, § XI(1). The Board consists of five representatives of the member companies of the Association and three licensed Mississippi agents from the coast area, all of whom are appointed annually by the Commissioner. Miss. Code Ann. § 83-34-7 (2006); Plan, § XI(2). The Commissioner also appoints a member of his own staff to serve as a nonvoting Board member. Plan, § XII(10). The Board is empowered by the Plan to perform all duties necessary or incidental to the administration of the Plan, including the statutory discretion to "purchase reinsurance in [sic] behalf of [MWUA's] members." Miss. Code Ann. § 83-34-5 (2006); Plan, § IX(1), XIII(2).

The five insurer defendants and their representatives, some of whom are individual defendants, were the appointed members and Board of the MWUA at all times complained of. The defendants allege that individual defendants Terry Blalock and Charles Rice were never members of the Board of the MWUA and are the subject matter of a separate motion for summary judgment which will be dealt with at a later

time.

The statute authorizes the Commissioner, in his discretion, to examine the affairs of the Association and require the Association, "at any time," to furnish him with additional information with respect to "any other matter which the Commissioner deems to be material to assist him in evaluating the operation and experience of the association." Miss. Code Ann. §§ 83-34-25, 27 (2006). Furthermore, under the Plan, the Board must also submit an annual written financial report to the Commissioner. Plan, § XIII(3). All decisions of the Association are subject to formal review by the Commissioner under the statutory appeals provision. The statute provides that "[a]ny person . . . or any affected insurer who may be aggrieved by an act, ruling or decision of the association" may, within thirty days after such ruling, appeal to the Commissioner. Miss. Code Ann. § 83-34-19 (2006). Orders of the Commissioner, in turn, are subject to judicial review. *Id.* The defendants argue in support of their motion to dismiss that the plaintiffs failed to exhaust this administrative remedy by not appealing the decision to the Commissioner regarding the amount of reinsurance purchased by the MWUA and thus they are not entitled to litigate the issue in this court.

## ALLEGATIONS OF THE COMPLAINT

The plaintiffs allege that, due to the mechanism under the Plan for distribution of expenses and losses among MWUA's member companies, the Individual Defendants, as members of MWUA's Board, "did not purchase adequate and reasonable reinsurance." They allege that the Board dismissed at least three of four companies which provided risk analysis concerning the purchase of reinsurance, and then ignored

5

the advice of the fourth to purchase enough reinsurance to cover a 500 year catastrophe.  The Board instead purchased $175,000,000 dollars of reinsurance which they contend covered a 250 year event versus the recommendation to purchase $283,000,000 to cover a 500 year event.  The plaintiffs contend that the Board actually only purchased enough reinsurance to cover a 100 year event.  This conflict is not relevant to the motion to dismiss but will certainly prove relevant in any assessment of damages, if necessary.

The   plaintiffs contend that the defendants were responsible for fifty percent of all expenses of the Association, including premiums for the purchase of reinsurance, by virtue of their net sales.  This made them liable for fifty percent of the first ten percent of unreinsured losses.  However, because of the volume of Essential Property Insurance these defendants wrote in the coast area, they were responsible for little if any of the remaining ninety percent of unreinsured losses.   Thus, as a result of the defendants' actions, the plaintiffs claim that their pro rata share of unreinsured losses for the 2005 hurricane season "greatly increased" to the point that they are liable for nearly ninety percent of unreinsured losses.  The plaintiffs allege that the defendants had the incentive to keep expenses low as they (the defendants) were disproportionately liable for these expenses versus keeping adequate levels of reinsurance, the absence of which, greatly increased the exposure of the plaintiffs to catastrophic losses.

The defendants assert that the plaintiffs do not allege any wrongdoing by the insurer defendants, except that "Insurer Defendants stood to gain by under-reinsuring the MWUA's risk."  They argue that the plaintiffs' claim of liability as to them results from the alleged liability of the insurer defendants based on the liability of the individual

6

defendants under the doctrine of *respondeat superior*. The plaintiffs assert that the insurer defendants are directly liable as board members by virtue of their appointments by the Commissioner. They acknowledge that the insurer defendants acted through their employees, who were designated to act on their behalf. The plaintiffs also assert common law claims for damages under theories of breach of fiduciary duty and negligence. In addition to compensatory damages, the plaintiffs seek punitive damages and a declaration that the defendants are not entitled to indemnification by the Association for any damages paid pursuant to this litigation.

## STANDARD OF REVIEW

The defendants have moved the court to dismiss this matter under Rule 12(b)(6) for failure of the plaintiffs to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, the court may not go outside the pleadings, specifically the complaint in this case. "The Rule 12(b)(6) motion . . . only tests whether the claim has been adequately stated in the complaint." 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1356 at 298 (1990).

As the Fifth Circuit has stated, "We may not go outside the pleadings. We accept all well-pleaded facts as true and view them in the light most favorable to the Plaintiff. We cannot uphold the dismissal 'unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Colle v. Brazos County, Texas*, 981 F.2d 237, 243 (5th Cir. 1993)(internal footnotes and citations omitted). *See also, Cinel v. Connick*, 15 F.3rd 1338, 1341 (5th

Cir. 1994).

While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the United States Supreme court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, ____ U.S. ____ , _____ , 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929, 940 (2007)(other citations omitted). If any matters outside the complaint are considered, the motion is converted to one for summary judgment. *See Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir. 1980). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)(quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993)).

Because the plaintiffs allege that this court has original jurisdiction of this civil action via complete diversity of the parties under 28 U.S.C §1332(a)(1), Mississippi law is controlling. *Erie R. Co. V. Tompkins*, 304 U.S. 64, 78-80 (1934); *Huss v. Gayden*, 465 F.3d 201, 205-06 (5th Cir. 2006).


## ADMINISTRATIVE REMEDIES

## A. EXCLUSIVITY

The defendants contend first that the plaintiffs' claims are within the exclusive administrative jurisdiction of the Commissioner of Insurance. They argue that the

legislature included in the MWUA statutes a remedy before the Commissioner of Insurance under Miss. Code Ann. § 83-34-19 (2006), which provides, in relevant part, as follows:

> Any person insured pursuant to this chapter, or his representative, or *any affected insurer who may be aggrieved by an act, ruling or decision of the association*, may within thirty (30) days after such ruling, appeal to the commissioner. Any hearings held by the commissioner pursuant to such an appeal shall be in accordance with procedure set forth in the insurance laws of Misississippi . . . All persons or insureds aggrieved by any order or decision of the commissioner may appeal as provided by the insurance laws of the State of Mississippi.

(emphasis added). Pursuant to § 83-34-19, § VIII of the Plan provides the specific procedure pertaining to the administrative remedy:

1. Any applicant for insurance and any person insured under the Plan of Operation or any affected insurer may appeal to the Board of Directors within fifteen days after final ruling, action or decision of the Association, the Inspection Bureau or a Servicing Insurer. The Board or an Appeals Committee designated by the Board shall hear and determine such appeal within fifteen days after the same is filed. Such determination may be appealed to the Commissioner within thirty days as provided by Statute.

2. Orders of the Commissioner shall be subject to judicial review as provided by statute..

Further, Article XII of the Plan provides that "[a]ny applicant or Member aggrieved by any ruling, decision, action or refusal to act on the part of the Association may appeal to the Commissioner as provided in Section VIII of the Plan."

The defendants have invoked the inter-related doctrines of "exclusive administrative jurisdiction" and "exhaustion of administrative remedies" in support of their argument that the plaintiffs' common law claims are precluded for failure to utilize their administrative remedies provided by § 83-34-19. While attempts by the

Mississippi Supreme Court and other authorities to distinguish these doctrines leave much to be desired, it is clear that both are used for the purpose of requiring exhaustion of administrative remedies in order to promote judicial and administrative efficiency. While the doctrine of "exhaustion of administrative remedies" recognizes exceptions fairly amenable to the plaintiffs' claims, a strict application of the "exclusive administrative jurisdiction" doctrine would bar the plaintiffs' claims, as its recognized exceptions are greatly limited and likely inapposite. It appears to the court that the defendants are in fact arguing that exclusive jurisdiction over the plaintiffs' claims lies **first** in the Board and the commissioner while recognizing that in the final analysis, a party aggrieved with a ruling of the commissioner may invoke judicial review. Further, a review of the relevant authorities leads the court to the same conclusion that the most that can be argued is that the plaintiffs were required to exhaust available remedies with the Board and the commissioner prior to resorting to invoking judicial remedies. The statutes do not require that administrative review preclude judicial review, only to precede it. Thus, the court will continue with an analysis examining the plaintiffs' duty to exhaust administrative remedies prior to invoking this court's jurisdiction.

Under Mississippi law, the doctrine of "exclusive administrative jurisdiction" provides:

> '[u]nless there is a clear indication of a contrary legislative intent, if the legislature provides a remedy before an administrative agency which meets the demands of due process of law and does not invade the constitutional jurisdiction of a court, a court may be deemed to have no jurisdiction in the premises.' [This doctrine] applies where a claim or demand is cognizable in the first instance by an administrative agency alone.

*Davis v. Barr*, 157 So. 2d 505, 510 (Miss. 1963) (citing 2 Am. Jur. 2d, §§ 779, 790,

p.691).  Thus, the doctrine "precludes an original action in court in regard to [claims within the exclusive jurisdiction of the administrative agency]," *Everitt v. Lovitt*, 192 So. 2d 422, 426 (Miss. 1966), unless the legislature has expressed a clear contrary intent or constitutional concerns are implicated.  *Davis*, 157 So. 2d at 510.  *Davis* also recognizes an exception where the remedy would be of no avail.  *Id*.  However, *Davis* fails to elucidate this exception and it is not recognized in subsequent case law.  *See id*. Furthermore, Mississippi law fails to enunciate a rule for determining when "a claim . . . is cognizable in the first instance by an administrative agency alone."  *Davis*, 157 So. 2d at 510.

The defendants argue that the doctrine of "exclusive administrative jurisdiction" applies to the plaintiffs' claims, thereby barring judicial review prior to exhaustion of the MWUA's statutory appeal provisions.  Specifically, the defendants argue that, by statute, the Commissioner retains exclusive jurisdiction over the plaintiffs' claims because (1) § 83-34-19 provides an administrative remedy before the Commissioner for challenges by insurers to Board decisions, and (2) the harms complained of by the plaintiffs fall within the statutorily defined authority of the Commissioner to approve the level of reinsurance purchased by the Association.  Both arguments are attempts to establish that the plaintiffs' claims are "cognizable in the first instance by an administrative agency alone.  See, *Davis*, 157 So. 2d at 510.

The plaintiffs respond that, because the enabling statutes do not expressly grant exclusive jurisdiction to the Commissioner, the doctrine of "exclusive administrative jurisdiction" does not apply to the instant claims.  Relying upon federal law, the

11

plaintiffs assert that exclusive jurisdiction is vested in an administrative agency only when legislative intent to grant exclusivity to the applicable administrative agency is "fairly discernible in the statutory scheme." *Association of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 157 (1970). Mississippi courts have not expressly announced a rule as to whether legislative intent to confer exclusive jurisdiction on an administrative agency must be explicit. However, the *Camp* holding appears dependent upon application of the Administrative Procedure Act's authorization of judicial review "except to the extent that – (1) statutes preclude judicial review." 397 U.S. at 156 (quoting 5 U.S.C. § 701(a) (1964 ed., Supp. IV). Thus, *Camp* is inapposite to the extent that the Administrative Procedure Act is not binding upon Mississippi courts. Furthermore, no other federal precedent cited by the plaintiffs or citing the doctrine of "exclusive administrative jurisdiction" clarifies the issue.

The plaintiffs further argue that the MWUA's enabling statutes contrast with other Mississippi statutes granting exclusive administrative jurisdiction to the Commissioner. *See, e.g.*, Miss. Code Ann. § 75-57-3 (2007) ("The Commissioner of Insurance is vested with the sole and exclusive power and authority [with regard to] . . . liquified compressed gases."); *see also* Miss. Code Ann. §§ 83-7-45 (2007), 75-57-15 (2007). For example, the Mississippi Court of Appeals held in *Town of Bolton v. Chevron Oil Co.*, 919 So. 2d 1101, 1107, that the State Oil and Gas Board had exclusive jurisdiction over the plaintiff landowners' tort and contract claims regarding the noncommercial disposal of oil field waste because said jurisdiction was expressly conferred by the enabling statute. (citing Miss. Code Ann. § 17-17-47(1) (2007) ("[T]he State Oil and Gas

12

Board shall continue to exercise exclusive authority to make rules and regulations and issue permits governing noncommercial disposal of oil field waste products . . . .")).  The *Town of Bolton* court utilized this language in conjunction with the provision of a corresponding administrative remedy pursuant to Miss. Code Ann. § 53-1-29 (2007) to invoke the doctrine of exhaustion of administrative remedies.

The defendants rebut the plaintiffs' argument by pointing out that § 17-17-47(1) grants exclusive *enforcement* authority to the Oil and Gas Board and not exclusive jurisdiction over related claims.  Rather, the defendants maintain that the doctrine of administrative jurisdiction is triggered by the provision of administrative remedies.  Thus, an explicit statutory grant of exclusive enforcement authority is unnecessary.  Indeed, the *Town of Bolton* court required exhaustion of administrative remedies to bar the landowner's claims and is consistent with the defendants' position.

## B. <u>EXHAUSTION</u>

Exhaustion of administrative remedies requires litigants to exhaust available administrative remedies before resorting to the courts for resolution of a dispute.  *Howard v. Totalfina E & P USA, Inc.*, 899 So. 2d 882, 888 (Miss. 2005).  Mississippi precedent supports the conclusion that the exhaustion will not be required unless the administrative remedy in question is "available."  *See, e.g.*, *id.*; *State v. Beebe*, 687 So. 2d 702, 705 (Miss. 1996); *Luedke v. Audubon Ins. Co.*, 874 So. 2d 1029, 1032 (Miss. Ct. App. 2004).  Further, exhaustion is not required when the available administrative remedy is inadequate.  *Howard*, 899 So. 2d at 888 (citing *Donald v. Amoco Production*

*Co.*, 735 So. 2d 161, 177 (Miss. 1999)); *Campbell Sixty-Six Express, Inc. v. J & G Express, Inc.*, 141 So. 2d 720, 726 (Miss. 1962).

As delineated in *Campbell*, the following variables are utilized to determine whether application of the doctrine is appropriate: "extent of injury from pursuit of administrative remedies, degree of apparent clarity or doubt about administrative jurisdiction, and involvement of specialized administrative understanding in the question of jurisdiction." *Id.* (quoting 3 Davis, Admin. Law Treatise, § 20.10 (1958). Furthermore, the following factors weigh against application of the exhaustion requirement:

> [T]he pursuit of the administrative remedy would result in irreparable harm; the agency clearly lacks jurisdiction; the agency's position is clearly illegal; the dispositive question is one of law; exhaustion would be futile; and comparatively, the action can be disposed of with less expense and more efficiently in the judicial arena.

*Mississippi Dep't of Envtl. Quality v. Weems*, 653 So. 2d 266, 278 (Miss. 1995) (quoting Davis, Admin. Law Treatise, 2d, Vol. 4 § 26:1 p. 413-14 (1983)). In contrast, the following factors militate in favor of application of the exhaustion requirement:

> [The] need for factual development, importance of the reflecting agency's expertise or policy preferences in the final result, probability that the agency will satisfactorily resolve the controversy without judicial review, protection of agency processes from impairment by avoidable interruption, conservation of judicial energy by avoiding piecemeal interlocutory review, and providing the agency opportunity to correct its own errors.

*Id.*

The plaintiffs contend that the exhaustion requirement should not be applied to the instant claims, as the administrative remedy is permissive, unavailable and inadequate. The plaintiffs further argue that application of the exhaustion requirement

is inappropriate because the defendants waived the exhaustion requirement by failing to provide the plaintiffs with legally adequate notice of their reinsurance decisions. Each argument will be addressed separately.

## The Permissive Language of the Enabling Statute

The plaintiffs' argument that the permissive language of § 83-34-19 precludes application of the exhaustion requirement is not supported by Mississippi law. Specifically, the plaintiffs argue that exhaustion of the administrative remedy provision is not mandatory because § 83-34-19 states that "any affected insurer . . . *may* . . . appeal to the commissioner." (Emphasis added.)  The defendants correctly point out that Mississippi courts have applied the exhaustion requirement notwithstanding similar permissive statutory language.  *See e.g., Scott v. Lowe*, 78 So. 2d 452, 454-55 (Miss. 1955) (applying exhaustion requirement where the enabling statute provided that public employees "may within ten days [of the adverse action] . . . file with the Civil Service Commission a written demand for an investigation"); *Davis v. Attorney General*, 935 So. 2d 86, 86-62 (Miss. 2006) (requiring plaintiff taxpayer to exhaust administrative remedies under Miss. Code Ann. § 27-7-71 (2007), which provides that "taxpayer[s] may appeal from the decision of the state tax commission as hereinafter set out").

Furthermore, in *Donald*, the Mississippi Supreme Court applied the exhaustion requirement to preclude the plaintiff landowner's negligence *per se* claim, despite the fact that the applicable statutes and regulations did not mandate exhaustion or "provide for or prohibit private causes of action.".  735 So. 2d at 177 (citing § 53-1-29 ("Any

interested person shall have the right to have the board call a hearing for the purpose of taking action in respect to any matter within the jurisdiction of the board . . . .)).  Rather, the *Donald* court applied the exhaustion requirement because the remedy was available and adequate to resolve the plaintiff landowner's negligence per se claim.  *See id.* at 176-77.

Additionally, in the sole case involving application of the exhaustion requirement under the MWUA, the Mississippi Court of Appeals stated in dicta that "a litigant is required to exhaust his administrative remedies before seeking judicial review."  *Luedke v. Audubon Ins. Co.*, 874 So. 2d 1029, 1032 (Miss. Ct. App. 2004).  The *Luedke* court ultimately refused to apply the exhaustion requirement because, after the plaintiffs' insurance policy had expired, they were neither "'applicants' [n]or 'insureds' within the meaning of section VIII of MWUA's 'Plan of Operation' which provides for appeals" pursuant to § 83-34-19.  *Id.*  However, the *Luedke* court nonetheless clearly stated that the MWUA remedy pursuant to § 83-34-19 was subject to the exhaustion requirement, despite its permissive language.  *See id.*  Thus, it is fairly clear that the permissive language of §83-34-19 is immaterial to an analysis of the applicability of the "exhaustion of administrative remedies" doctrine in the instant case.

## The Availability of the Administrative Remedy

The availability of the administrative remedy for resolution of the plaintiffs' claims is questionable.  Mississippi precedent supports the plaintiffs' argument that the doctrine of "exhaustion of administrative remedies" will not be applied unless the

administrative remedy in question is "available." *See, e.g.*, *Howard*, 899 So. 2d at 888; *Beebe*, 687 So. 2d at 705; *Luedke*, 874 So. 2d at 1032. The plaintiffs argue that the administrative remedy provided under the Plan is unavailable to resolve their claims.

Specifically, the plaintiffs' aver that the language and context of the appeals provision demonstrate that it does not contemplate claims by MWUA member insurers for breach of the Board's fiduciary duties. The defendants, on the other hand, assert that the plain language of the enabling statute encompasses any challenge to "an act, ruling or decision of the association." § 83-34-19.

Implicit in any application of the doctrine of "exhaustion of administrative remedies" is the assumption that the administrative remedy is available to resolve issues of the type contested between the litigants. *See Howard*, 899 So. 2d at 888 ("[G]enerally, a complainant must exhaust administrative remedies *available to him* . . . ." (emphasis added)). Indeed, the failure of Mississippi courts to apply the doctrine in some cases can be interpreted as predicated upon the unavailability of the remedy to the respective plaintiff. *See, e.g., Beebe*, 687 So. 2d 702; *Luedke*, 874 So. 2d 1029.

For example, in *Beebe*, the administrative decision contested by the plaintiff health care provider became final after the thirty day hearing request period expired, pursuant to § 1-7 of the Mississippi Medicaid Commission Medical Assistance Program. 687 So. 2d at 705. The applicable regulations provided no administrative remedy beyond the thirty day hearing request period. *Id*. The Mississippi Supreme Court therefore held that the exhaustion requirement was inapplicable because the defendant "failed to point out any adequate administrative remedy *available* to Beebe at

the time he resorted to the courts." *Id.* (emphasis added).

Additionally, in *Luedke*, the Mississippi Court of Appeals refused to apply the exhaustion requirement in the MWUA context because the plaintiffs' were neither "'applicants' [n]or 'insureds' within the meaning of section VIII of MWUA's 'Plan of Operation.'" 874 So. 2d at 1032. Thus, though the Mississippi courts have not stated it explicitly, both *Beebe* and *Luedke* can easily be read as endorsing the plaintiffs' argument that unavailability of an administrative remedy renders the doctrine of "exhaustion of administrative remedies" inapposite.

The plaintiffs argue that the plain text of the enabling statute, Plan and Articles demonstrate that the appellate process was designed to resolve rate, coverage and inspection issues arising out of the writing of property insurance, and not to resolve claims by MWUA member insurers for breach of the Board's fiduciary duties. The plaintiffs fail to cite any case law endorsing this position, as this is a question of first impression. The plaintiffs instead essentially argue that because all other relevant sections of the Plan address rate, coverage and inspection topics, the same context applies to the appeal provision in § VIII. Thus, because neither the fiduciary duty of the Board to the Members nor the reasonableness of the level of reinsurance purchased fall within this context, the appeal provision is unavailable to resolve such disputes. While this argument is persuasive, there is no case law specifically on point upon which to rest such a conclusion.

The defendants respond that the plain language of § 83-34-19 encompasses any challenge by an "affected insurer . . . [to] an act, ruling or decision of the association." While § 83-34-19 is certainly susceptible of such a construction, the limitations placed

18

on the Association by the Plan and Articles strain the defendants' argument. The plaintiffs point out that § VIII limits appeals to "final ruling[s], action[s] or decision[s] of *the Association, the Inspection Bureau or a Servicing Insurer*." (emphasis added). The operative question then becomes whether the defendants' decisions, as alleged, qualify for the appeals process provided under § VIII of the Plan.

The defendants assert that the plaintiffs' complaint essentially constitutes "a challenge of the Board's decision [] on behalf of the Association." The plaintiffs contend that, as alleged in the Complaint, the defendants' decisions regarding the level of reinsurance to purchase for the 2004-05 hurricane season were not made on behalf of the Association, but were instead instances of self-dealing made on their own behalf under the guise of the Board. (*See, e.g.* Compl. ¶ 55 ("Defendants could not reasonably have believed that their actions were in the best interests of MWUA or members of the class.")). Thus, according to the plaintiffs', no administrative remedy is available to resolve the instant claims because the defendants are not "the Association, the Inspection Bureau or a Servicing Insurer," as contemplated under § VIII of the Plan.

As posited by the plaintiffs, *Luedke* provides weak persuasive authority that Mississippi courts construe narrowly the parties to whom the administrative remedy provided under § VIII is available. In *Luedke*, the Mississippi Court of Appeals refused to apply the exhaustion requirement because, after the plaintiffs' insurance policy had expired, they were neither "'applicants' [n]or 'insureds' within the meaning of section VIII . . . ." 874 So. 2d at 1032. Thus, a strict construction of § VIII of the Plan provides a basis for finding the administrative remedy unavailable and therefore application of the doctrine of "exhaustion of administrative remedies" inappropriate to the instant case.

Finally, the plaintiffs argue that the absence of any procedure for judicial review of the type of claims asserted further demonstrates the unavailability of the administrative remedy for resolution of the instant claims. Section VIII of the Plan provides for judicial review of orders of the Commissioner "as provided by Statute." Section 83-34-19, the statute referenced, correspondingly permits such review "as provided by the insurance laws of the State of Mississippi."

The plaintiffs contrast the explicit provision of procedures for the judicial review of the Commissioner's decisions in other areas with the legislative silence regarding appeal procedures for the instant claims. On the other hand, the defendants argue that the Mississippi Supreme Court previously upheld as adequate an identical provision for judicial review under the MWUA's predecessor in *Miss. Ins. Underwriting Ass'n v. Standard Prods., Inc.*, 271 So. 2d 405 (Miss. 1972). However, *Standard Products* dealt with judicial review of a decision by the Commissioner regarding the MIUA's (the predecessor of the MWUA) refusal of insurance coverage to the plaintiff business.

Thus, the *Standard Product* court's affirmation of the statutory language identical to § 83-34-19 did not specifically address any requirement that insurance laws address the type of dispute at issue. Nonetheless, no case law announces that the insurance laws must address the type of dispute at issue in order for the administrative remedy to be available to resolve the dispute. Thus, the plaintiffs argument is unpersuasive in this respect.

Nevertheless, it is questionable whether the administrative remedy provided under § 83-34-19 is available to resolve the plaintiffs' claims relating to the defendants' decision regarding the level of reinsurance purchased for the 2004-05 hurricane

seasons.  Certainly, it appears that Mississippi courts require an administrative remedy to be available to the litigants as a prerequisite to enforcement of the exhaustion doctrine.  Further, a strict construction of § VIII of the Plan offers grounds for finding the administrative remedy unavailable.  But, as pointed out above, since there is no case law on point, the conclusion that Mississippi courts would so construe the MWUA's appeals provision is tenuous.  Nonetheless, to the extent that the defendants bear the burden as moving party, they have failed to show conclusively that the administrative remedy provided under § VIII of the Plan and pursuant to § 83-34-19 is available to resolve the plaintiffs' claims.  Therefore, the availability of the administrative remedy for resolution of the plaintiffs' claims miligates against dismissal.

**Adequacy of the Administrative Remedy**

The administrative remedy provided pursuant to § 83-34-19 appears to this court as inadequate to resolve the plaintiffs' breach of fiduciary duty and negligence claims because these claims do not specifically relate to the remedy.  Furthermore, though not dispositive, the short, successive deadlines of the administrative remedy and the lack of objective standards of review militate against finding the remedy adequate.  Inadequacy of the available administrative remedy is a well recognized exception to the doctrine of "exhaustion of administrative remedies," as construed by the Mississippi courts. *Howard*, 899 So. 2d at 888 (citing *Donald*, 735 So. 2d at 177); *Campbell*, 141 So. 2d at 726.

The plaintiffs assert that the remedy provided is inadequate because (1) it cannot resolve the common law claims for money damages alleged in the complaint, (2)

the short, successive filing deadlines outlined in § VIII of the Plan create a high risk of forfeiture of legitimate claims, and (3) the absence of clear standards under which the Commissioner would adjudicate the instant dispute precludes application of the exhaustion requirement. The defendants contend that inability to award money damages is immaterial to analysis of the adequacy of the administrative remedy. Furthermore, the defendants argue that the Plan, enabling statute, applicable regulations and precedent provide adequate procedures for adjudication of the plaintiffs' claims under the administrative remedy.

**Relation of the Plaintiffs' Claims to the Administrative Remedy**

The plaintiffs argue that the remedy provided is inadequate because it cannot resolve the common law claims for money damages alleged in the complaint. Relying upon federal precedent, the plaintiffs assert that the inability to award monetary damages under the administrative remedy "weighs heavily against imposing an exhaustion requirement." *McCarthy v. Madigan*, 503 U.S. 140, 149 (1992), *superseded by statute as recognized in Booth v. Churner*, 532 U.S. 731, 741 (2001).

The plaintiffs cite *Howard* for the proposition that administrative remedies are inadequate when the claims asserted do not specifically relate to the available administrative remedy. In *Howard*, the Mississippi Supreme Court refused to apply the exhaustion requirement because the plaintiff landowner's common law claims for "negligence, nuisance, trespass, breach of contract, strict liability, and outrageous conduct [did] not specifically relate to an administrative remedy" within the authority of

22

the State Oil and Gas Board.  *See* 899 So. 2d at 888.

While the defendants correctly concede that neither the Board nor the Commissioner have the authority to grant monetary damages under the administrative remedy provided pursuant to § 83-34-19, they contend that the inability to award money damages is immaterial to analysis of the adequacy of the administrative remedy.  Citing the Mississippi Court of Appeals' decision in *Town of Bolton,* they assert that the exhaustion requirement precludes the plaintiffs' ability to seek damages through judicial review because the Commissioner's authority encompasses the harms complained of in the lawsuit.

In *Town of Bolton*, the plaintiff landowner alleged *inter alia* various tort claims and breach of contract.  The *Town of Bolton* court held that the plaintiff landowners were required to exhaust the applicable administrative remedy before the State Oil and Gas Board, as their tort and contract claims all rested upon types of harm within the Board's authority regarding the noncommercial disposal of oil field waste.  919 So. 2d at 1107 (citing § 17-17-47(1) ("[T]he State Oil and Gas Board shall continue to exercise exclusive authority to make rules and regulations and issue permits governing noncommercial disposal of oil field waste products . . . .")).  Whereas the plaintiff landowners' characterization of their allegations as tort and contract claims did not render the administrative remedy inadequate, the holding in *Town of Bolton* rested upon the fact that these claims all concerned noncommercial disposal of oil field waste. *Id.*  Thus, the harms complained of were clearly within the authority of the applicable administrative agency and, therefore, subject to the applicable administrative remedy.

23

In contrast, the common law claims alleged in *Howard* were inadequate because they concerned the *commercial* disposal of oil field waste. *See* 899 So. 2d at 888. Thus, the harms complained of by the plaintiff landowner in *Howard* were not clearly within the authority of the applicable administrative agency. *Id*.

Here, the defendants contend that the plaintiffs' claims in essence constitute a challenge to the reasonableness of the Board's decision regarding the level of reinsurance to purchase for the 2004-05 hurricane seasons. Thus, according to the defendants, the harms complained of by the plaintiffs fall within the Commissioner's authority to approve the level of reinsurance purchased. However, as in *Howard*, the plaintiffs' breach of fiduciary duty and negligence claims do not clearly fall within the Commissioner's authority. *See id.*

Whereas the administrative remedy provided under § VIII of the Plan clearly contemplates disputes over insurance rates, coverage and inspection issues arising out of the writing of property insurance, it is not clear that the remedy encompasses claims by MWUA member insurers for negligence and breach of the Board's fiduciary duties. As such, *Town of Bolton*, 919 So. 2d at 1107, is inapposite and Mississippi courts would likely find the administrative remedy inadequate under *Howard*, 899 So. 2d at 888. Under this assumption, the inability to award monetary damages under the administrative remedy is immaterial. Nonetheless, the administrative remedy is inadequate because Mississippi courts would most likely hold that the plaintiffs' breach of fiduciary duty and negligence claims do not specifically relate to the remedy.

**The Short Filing Deadlines and the Adequacy of the Administrative Remedy**

Citing the United States Supreme Court's ruling in *McCarthy*, the plaintiffs next argue that the remedy provided pursuant to § 83-34-19 is inadequate because the short, successive filing deadlines outlined in § VIII of the Plan create a high risk of forfeiture of legitimate claims. The *McCarthy* court held that an administrative remedy provided to prisoners was inadequate because *inter alia* it created a high risk of forfeiture for legitimate claims through the imposition of short, successive deadlines comprised of fifteen, twenty and thirty day periods. 503 U.S. at 152. Similarly, § VIII of the Plan provides for appeal to the Board "within fifteen (15) days after [a] final ruling, action or decision of the Association" followed by a thirty day period in which to file a subsequent appeal with the Commissioner.

Because Mississippi courts have not addressed this issue, the invocation of federal precedent is not inappropriate. Thus, though *McCarthy* is not dispositive to the issue, it is additional persuasive authority for finding that the administrative remedy is inadequate in the instant case. This conclusion is buttressed to the extent of the pertinence of the plaintiffs' allegations that the defendants' withheld material facts and/or failed to provide legally sufficient notice of its decision as to the level of reinsurance purchased for the 2004-05 hurricane seasons, as will be discussed infra.


**The Lack of Definitive Standards for the Resolution of the Plaintiffs' Claims**

The Mississippi Supreme Court's decisions in *Pets & Such Foods* and *Brewer* also provide persuasive authority for finding the administrative remedy provided under §

VIII of the Plan inadequate to resolve the instant dispute.  The plaintiffs assert that the remedy provided is inadequate because, as it provides no standards under which to adjudicate the dispute, the plaintiffs' claims would be subject to arbitrary administrative review.  Furthermore, the plaintiffs contend that the arbitrariness of the administrative review is compounded by the fact that the defendants comprise the Board to which appeals are made under § VIII of the Plan.  The defendants on the other hand contend that the remedy is adequate, as the Board is ultimately answerable to the Commissioner, who is (1) guided by generally applicable rules of practice and procedure and (2) whose orders are subject to judicial review.

Under Mississippi law, an administrative remedy is inadequate when no definite standards for adjudication of the dispute have been established, despite the fact that the administrative agency is statutorily empowered to do so.  *See Pets & Such Foods*, 394 So. 2d at 1354-55.  In *Pets & Such Foods*, the Mississippi Air & Water Pollution Commission "failed to set definable, objective measures with [which to measure] the emission of odors," despite the statutory authority to do so, as provided under Miss. Code Ann. § 49-17-29 (2007).  *Id.* at 1355.  Thus, the administrative remedy provided was inadequate to resolve the plaintiff's challenge to revocation of its operating license due to the emission of odors.  *Id.*  Additionally, the Mississippi Supreme Court noted that a remedy requiring review of a common law breach of contract claim before "an administrative tribunal ultimately answerable to [a] Board [comprised of the defendants]" implicated notions of due process.  *Bd. of Trs. of State Instits. of Higher Learning v. Brewer*, 732 So. 2d 934, 937 (Miss. 1999).

Here, although §83-34-29 provides that "[T]he Association is authorized to promulgate rules for the implementation of [the enabling statute]," neither the Plan nor the Articles include standards for administrative review or enforcement of breaches' of the Board's duties. Thus, the Mississippi Supreme Court's holding in *Pets & Such Foods* appears to dictate that the administrative remedy is inadequate because no definite standards for adjudication of the dispute have been established. *See Pets & Such Foods*, 394 So. 2d at 1354-55.

**Due Process Concerns**

The due process concerns impugned by an administrative appeal before the Board comprised of the defendants also counsel persuasively against the adequacy of the administrative remedy. *See Brewer*, 732 So. 2d at 937. The defendants contend that the remedy is adequate, as the Board is ultimately answerable to the Commissioner under § VIII of the Plan. The Commissioner is in turn guided by generally applicable standards of practice and procedure. *See* 28-000-044 Miss. Code R. § 88-101 (Weil 2006). Furthermore, § VIII of the Plan provides for judicial review of orders of the Commissioner.

The defendants also assert that the Mississippi Supreme Court upheld the adequacy of an administrative review enabled by legislation identical to § 83-34-19 under the MWUA's predecessor in *Standard Products*. However, this argument is unavailing, as *Standard Products* merely affirmed the adequacy of the remedy with respect to the Association's appeal to the Insurance Commissioner. *See* 271 So. 2d at

405-07.  Thus, the Mississippi Supreme Court did not speak to the adequacy of a remedy in which a party to the dispute comprises the appellate tribunal.

The defendants further argue that *Brewer* is inapposite as the plaintiff in *Brewer* had previously exhausted his administrative remedies.  However, this distinction is immaterial to the *Brewer* court's decision, as its holding rested upon the implication of due process concerns.  Thus, it appears that *Brewer*, although not addressed specifically to the administrative remedy in question here, is nonetheless strong persuasive authority for finding the remedy provided under § VIII of the Plan inadequate.  Therefore, the court finds that the administrative remedy is inadequate, and concludes that the Mississippi courts would refuse to apply the doctrine of "exhaustion of administrative remedies" to bar the plaintiffs' claims.


**Waiver of the Exhaustion Requirement**

Insofar as the defendants' alleged self-dealing prevented the plaintiffs from discovering facts material to exhaustion of the applicable administrative remedy, the exhaustion requirement is also inapplicable.  The plaintiffs cite *Bowen v. New York*, 476 U.S. 467, 481-82 (1986) for the proposition that the exhaustion requirement is waived where plaintiffs are prevented from exercising an administrative remedy because the defendant's "secretive conduct prevents plaintiffs from knowing of a violation of rights."

The defendants contend that the Mississippi Supreme Court's holding in *Hood v. Miss. Dep't of Wildlife Conservation*, 571 So. 2d 263 (Miss. 1990), *overruled on other grounds by E. Miss. State Hosp. V. Callens*, 892 So. 2d 800, 822 (Miss. 2004) supports

their argument to the contrary.  In *Hood*, an employee was terminated after being

convicted for conspiracy to commit vote fraud.  *Id.* at 265.  The plaintiff employee

appealed dismissal of his reinstatement claim for failure to exhaust administrative

remedies, arguing that the subsequent reversal of the criminal conviction made material

evidence available after the period for administrative appeal had expired.  *Id.* at 270.

While the *Hood* court refused to waive the exhaustion requirement, the facts upon

which this holding was based are distinguishable from the instant case.  *See id.*

     In contrast to *Hood*, the plaintiffs have alleged that the defendants' actions

prevented discovery of facts material to the exercise of the applicable administrative

remedy.  *See id.*  Thus, since the plaintiffs "'could not attack a policy they could not be

aware existed,' it would be unfair to penalize [them] for not exhausting under these

circumstances."  *Bowen*, 476 U.S. at 482 (internal citations omitted).


## CONCLUSION

     Based on the foregoing analysis, the defendants' Joint Motion to Dismiss should

be denied, as the applicable administrative remedy is not clearly available and is

inadequate for resolution of the plaintiffs' claims.  Neither the doctrine of "exclusive

administrative jurisdiction" nor the doctrine of "exhaustion of administrative remedies"

applies to bar the plaintiffs' claims.  Specifically, the court finds that the administrative

remedy is inadequate to resolve the plaintiffs' claims because the claims do not

specifically relate to the remedy.  Furthermore, the short, successive deadlines of the

administrative remedy, the lack of objective standards of review, due process concerns

and the alleged inability to discover facts material to exercise the  applicable administrative remedy militate against enforcing the exhaustion requirement.

IT IS THEREFORE ORDERED AND ADJUDGED that the Joint Motion to Dismiss **[#33]** filed on behalf of the defendants is Denied.  The parties are instructed to contact the Magistrate Judge within ten days of this Order for the entry of a new Case Management Order.

SO ORDERED AND ADJUDGED this the 17th day of August, 2007.


*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE